UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 7:19-MJ-2-REW-EBA |
| v. | ) | |
| | ) | OPINION & ORDER |
| JOHN HUNTER FRANKLIN, | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On February 11, 2020, the Court held a hearing pursuant to 18 U.S.C. §§ 4241(c) and 4247(d) to assess Defendant's competency to face further proceedings in this case. *See* DE #42 (Minutes). For the reasons that follow, the Court finds Defendant currently incompetent to proceed in this matter and develops the prospective schedule accordingly.

1. **Background**

On January 16, 2019, Defendant initially appeared before United States Magistrate Judge Edward B. Atkins on a Complaint. DE #7 (Minutes). The Complaint alleges that Franklin unlawfully possessed a firearm after having been previously adjudicated mentally ill and involuntarily hospitalized, in violation of 18 U.S.C. § 922(g)(4). DE #1 (Complaint). Per the Affidavit supporting the Complaint, Special Agent Paul Buta with the United States Secret Service affirmed that, on July 25, 2018, the Perry District Court had adjudicated Defendant mentally ill and ordered him to be hospitalized at a psychiatric facility for 60 days. DE #1-3 ¶ 4.[1]

---

[1] Per the Complaint, Franklin remained hospitalized until only August 8, 2018. *Id.*

SA Buta thereafter received information on January 9, 2019, from an anonymous source, concerning Defendant's Facebook posts. *Id.* ¶ 1. On or about January 8, 2019, Defendant posted a video of himself (per SA Buta's voice identification) firing rounds of ammunition into a pickup truck parked in a field.[2] *Id.* ¶ 2. On December 9, 2018 and January 6, 2019, Defendant authored various Facebook posts discussing gun possession and usage. *Id.* ¶ 3. Additionally, on January 9, 2019, Franklin posted on Facebook that he intended to confront the Secret Service at its office in Lexington, Kentucky: "Im goona take those bamboo staffs and that PA Loud horn in my USMC uniform and broad cast it live over facebook that a Marine is calling out the secret service marine to prove his katy perry story of which is easily done to undo his false medical diagnosis that in return has stripped him of his gun rights." *Id.* ¶ 5. Franklin further stated: "I might be in jail Thursday bc im going to their office in Lexington to do this." *Id.*

At Franklin's initial appearance, the parties jointly requested a competency evaluation, which Judge Atkins ordered. DE #8. After receipt of the resulting psychiatric report, Judge Atkins held a competency hearing on May 31, 2019. DE #19 (Minutes). The parties stipulated to report admissibility, and authoring forensic psychologist Dr. Judith Campbell testified consistently with the report's findings. *Id.* Dr. Campbell concluded that Franklin suffered from a "severe mental illness or mental defect sufficient to preclude his ability to proceed competently." DE #16 at 9. She further found that he experienced "delusional thinking[,]" *id.* at 10, and operated under a "paranoid delusional belief system[,]" *id.* at 11. Dr. Campbell noted, in particular, Franklin's preoccupation with a perceived prior marriage to celebrity Katy Perry and insistence that the instant case is part of a conspiracy to strip him of firearm rights. *See id.* at 12 (observing that

---

[2] The record does not reflect the date of alleged video filming.

Defendant "struggled to remain on topic, and remained fixated on his beliefs about Katy Perry, and the conspiracy to deprive him of his gun rights").

Though Dr. Campbell found that Defendant had a factual understanding of the charges against him and the legal framework, despite Franklin's often sarcastic and uncooperative responses to case-related questions (*see, e.g.*, *id.* at 13), she determined that "his delusional thinking may interfere with his ability to assist his lawyer and make rational, reality-based decisions regarding how his case should be handled." *Id.* at 13. Accordingly, Dr. Campbell opined that Defendant was then incompetent to face further case proceedings. *Id.* On September 7, 2019, based on Dr. Campbell's unchallenged report, Judge Atkins found Franklin incompetent to proceed and committed him to competency restoration treatment per § 4241(d). DE #21.

After receiving the post-treatment psychiatric report (DE #29), Judge Atkins held a second competency hearing on January 9, 2020. DE #32 (Minutes). Though the parties again stipulated to report admissibility and agreed that any testimony would be consistent with the report, Defendant disagreed with the report's conclusion that he remained incompetent to proceed. DE #32 (Minutes). The second psychiatric report's findings and conclusion were largely and fundamentally consistent with the first; the evaluating forensic psychologist, Dr. Allyson Wood, found that Franklin's symptoms of mental illness were "severe due to his rigid adherence to his delusional beliefs and resulting significant functional impairment." DE #29 at 6. She further noted that Franklin's delusional beliefs were consistent and pervasive throughout the treatment course. *See id.* at 7 ("He expressed delusional beliefs about his gun rights and Katy Perry throughout testing."); *id.* at 3 ("[Franklin] demonstrated delusional ideation regarding his past relationship with singer Katy Perry, paranoia regarding his right to possess firearms and the intent of others, as well as grandiose beliefs about his intellect and 'charm.'").

3

Dr. Wood additionally observed that Franklin's preoccupation with Katy Perry and other delusions impacted his ability to rationally consider his own case and consult with his attorney. *See id.* at 8 ("[H]e maintained that his attorney 'does not believe in [his] case' and thus does not share what he believes to be pertinent evidence with him including the names of people who can allegedly confirm his past relationship with Katy Perry."); *id.* ("Mr. Franklin's primary frustration with his lawyer appears to be centered on his lawyer allegedly not believing Mr. Franklin had a past relationship with Katy Perry, resulting in an inability for Mr. Franklin to assist him in a rational manner."); *see also id.* at 5 (describing Defendant's calls and emails during the treatment course and identifying persistent focuses on proving that he was in a prior relationship with Katy Perry and exposing a conspiracy regarding his gun rights, both of which negatively impacted Franklin's relationship with counsel and his ability to rationally consider the case). Concerningly, Dr. Wood's report further found that Defendant had poor self-awareness (particularly as to mental health) and was uncooperative in testing and treatment efforts. *See, e.g.*, *id.* at 4 (noting that Franklin had "very poor insight into his mental illness[]" and was "paranoid and grandiose[]"); *id.* at 5 (observing that Franklin "denied any mental health diagnoses"); *id.* at 6 ("Mr. Franklin refused to participate in psychological testing stating that he can 'easily manipulate' testing materials."); *id.* at 7 (remarking that Defendant "has poor insight into his condition" and was unwilling to take recommended medications); *id.* at 3 ("[Franklin] denied a history of, or current, mental health concerns which is inconsistent with documented mental health history."); *id.* at 5 (stating that Franklin did not attend any treatment group sessions while at FMC Butner).

Based on clinical observations and testing, Dr. Wood ultimately opined that Defendant remained incompetent to proceed. Though Dr. Wood, like Dr. Campbell, found that Franklin had a rational understanding of the charges and of legal proceedings in an abstract sense, Dr. Wood

4

concluded that Franklin was "unable to rationally apply this information to his own situation due to the severity of his delusional beliefs." *Id.* at 9. She further found that Franklin was "unable to assist his attorney, given his frustration that his attorney does not heed these beliefs." *Id.* Critically, Dr. Wood noted that Franklin's "reasoning, problem-solving, and decision-making abilities concerning his case [were] significantly impaired" and anticipated that he would "have difficulty . . . discerning and disclosing information accurately, . . . thoughtfully considering [case] alternatives, and consulting effectively with his attorney." *Id.*

At the second competency hearing, Franklin expressed interest in engaging an independent evaluator to assess his competency. *Id.* Judge Atkins provided Defendant a deadline to seek such an evaluator and propose mechanics, and Franklin subsequently sought an extension of time to do so. *Id.* However, on January 15, 2020, Judge Aktins denied the request as moot and recommended that the Court find Franklin competent to proceed based on the existing record. DE #34. Judge Atkins found that Defendant's in-court questions and responses, as well as his demeanor and behavior, were appropriate and demonstrated rational understanding of the proceedings, contrasting with the reports' incompetency findings. *Id.*

On January 23, 2020, the Clerk assigned this matter to the undersigned, given Judge Atkins's pending recommendation. After the United States timely objected to the competency recommendation, the Court rejected Judge Atkins's recommendation and scheduled a new competency hearing, in light of the *de novo* review requirement and the recommendation's necessarily personal-observation basis for rejection of the record medical evidence. DE #39. Neither side presented additional proof at the hearing, despite opportunity, and all parties agreed that the Court may consider the full record (including both psychiatric reports and the evaluators' filed (DE #41) CVs) in reaching a competency decision. DE #42.

**2. Discussion**

Per § 4241's codification of the *Dusky* standard,[3] the Court must determine, by a preponderance of the evidence, whether Franklin "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]" 18 U.S.C. § 4241(d); *see also Drope v. Missouri*, 95 S. Ct. 896, 904 (1975) (confirming two-prong *Dusky* standard). Here, the parties' relative positions are atypical; the defense urges the Court to find that the evidence weighs in favor of finding Defendant competent, while the United States argues that he remains incompetent, per the medical findings. The Sixth Circuit has not determined which party bears the burden of establishing competency. *See United States v. Dubrule*, 822 F.3d 866, 876 n.3 (6th Cir. 2016). Regardless of burden allocation, the documented evidence of record in this case solidly preponderates in favor of finding Defendant presently incompetent. *See, e.g.*, *Medina v. California*, 112 S. Ct. 2572, 2579 (1992) (explaining that uncertainty concerning competency burden matters only in the "narrow class" of cases where proof is "in equipoise").

In assessing Franklin's competency, the Court considers several factors collectively, including in-court observations of Defendant's demeanor and conduct, evidence of irrational behavior, history of past mental illness, and medical evidence in the record. *See Drope*, 95 S. Ct. at 908; *Williams v. Bordenkircher*, 696 F.2d 464, 466 n.1 (6th Cir. 1983) (identifying the defendant's medical history, the opinions of psychiatric experts, and the defendant's demeanor as relevant considerations and noting that none "should be viewed in isolation"); *see also Pate v.*

---

[3] *See Dusky v. United States*, 80 S. Ct. 788, 788–89 (1960) ("[I]t is not enough for the district judge to find that the defendant is oriented to time and place and has some recollection of events, but that the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.") (alterations and quotation marks omitted).

*Robinson*, 86 S. Ct. 836, 842 (1966) (finding error in a court's dispositive consideration of the defendant's demeanor, without further competency inquiry, in light of "uncontradicted testimony of [the defendant's] history of pronounced irrational behavior"). The body of relevant material in this case centrally features two consistent, unimpeached psychiatric reports (the first based on over two months of clinical observation and testing, and the second based on more than four months of same), counsels' responsive arguments (including defense counsel's representations regarding his consultations with Defendant), and the Court's observations and impressions at the February 11, 2020 competency hearing.

Critically, both psychiatric reports identified persistent, pervasive delusions that undermined Defendant's ability to focus on the legal and factual issues relevant to the instant charges and infected his relationship (and communication) with his attorney and other participants in the legal system. Defendant's preoccupation with these non-reality-based beliefs preclude him from meaningfully evaluating his case and engaging with counsel. Indeed, Dr. Wood observed that Defendant could not consider possible defenses or case progression options due to his "staunch assuredness" that the instant prosecution is part of a baseless conspiracy targeting his gun rights, *see* DE #29 at 8; Dr. Wood further noted that Franklin would not cooperate with his attorney and meaningfully address relevant case issues, given his fixation on proving his prior relationship with Katy Perry, *see id.* at 8–9. Both psychiatric reports demonstrate Franklin's inability to remain focused on case-related matters; the examiners both noted severe difficulty redirecting Franklin from delusional courses of thought and facilitating productive discussion. *See, e.g.*, DE #16 at 9 (noting need for "frequent redirection to answer the questions directly"); *id.* ("difficulty remaining focused"); *id.* at 10 (observing that Franklin "consistently insisted" during conversations that he was previously married to Katy Perry and that he "repeatedly insisted" the instant prosecution was

7

a conspiratorial attempt to take away his gun rights"); *id.* at 11 (noting a persistent "need for redirection away from his fixation regarding his relationship with Katy Perry"); DE #29 at 6 (noting Defendant's "rigid adherence" to non-reality-based beliefs during discussions); *id.* at 8 (stating that Defendant "was not able to be redirected" away from fixation on the Katy Perry topic).

The unassailed expert medical evidence establishes Defendant's immutable attachment to non-reality-based beliefs and the inability either to critically assess those beliefs when challenged or to forge ahead in case discussions despite them. *Cf. Dubrule*, 822 F.3d at 874 (considering as persuasive expert testimony that the defendant's "'delusions were not firmly held'—that is, when confronted with contradictory evidence, Dubrule would often back away from his apparently delusional claims"); *see also United States v. Krueger*, No. 1:13CR561, 2017 WL 2349600, at *2 (N.D. Ohio May 31, 2017) (finding the defendant incompetent and noting that "unlike the defendant in [*Dubrule*], Defendant shows no ability to appropriately alter his decisions when confronted with new information"); *United States v. Rodman*, 446 F. Supp. 2d 487, 493–94 (D.S.C. 2006) (concluding that, though the defendant was "certainly an intelligent man with an accurate understanding of the nature and consequences of a federal criminal proceeding[,]" his "paranoia and delusional beliefs caused by bipolar type schizoaffective disorder [were] so pervasive and consuming as to make him incompetent to assist in his own defense"); *United States v. Hemsi*, 901 F.2d 293, 296 (2d Cir. 1990) (concluding that the district court's incompetency finding "was adequately supported by the record" where medical evidence demonstrated that the defendant's "major psychiatric disorder and his impaired sense of reality prevented him from focusing on his legal needs and from acting effectively on his intellectual understanding" of the legal process and case issues). Franklin's delusional beliefs, per the documented evidence, consume his thoughts and consistently avert his attention from concrete case matters. Defendant's fixation on proving

his relationship with Katy Perry, as well as his absolute conviction that the charges in this case do not apply to him and are the result of a conspiracy, distort his perception of reality and significantly impair his ability to rationally consider his own circumstances, as Dr. Wood found.[4]

Further, both reports demonstrate Franklin's stark lack of self-awareness and inability to realistically perceive his current mental health condition and rationally accept the circumstances of the prosecution. Despite years of contrary documented evidence, Defendant denies any mental health history or present concerns, and he mostly refuses to cooperate and participate in testing

---

[4] Defendant's delusions are intimately entwined with the substance of his case. His belief that the instant prosecution is a targeted conspiracy prevents him from accepting, as a threshold matter, that he must address the charges against him, take this case and his defense seriously, and logically consider how to proceed. *See, e.g.*, DE #29 at 7–8 (reporting that Defendant scored a 0/12 on the Appreciation portion of the assessment—which scores an individual's "rational understanding of his own legal situation"—because he could not apply legal concepts and questions to his own case, due to his insistence that the July 2018 hospitalization was a "targeted" conspiracy and "under false pretenses[]"). Far from a mere misguided legal theory, this conspiracy-based belief fundamentally colors Franklin's entire perception of case-related events and renders him unable to discern facts relevant to a potential defense. *Cf. United States v. Davis*, 515 F. App'x 486, 493–94 (6th Cir. 2013) (recognizing "that the mere fact that a criminal defendant espouses a far-fetched, or even bizarre, legal-defense theory is insufficient to" support an incompetency finding). Relatedly, Defendant's fixation on Katy Perry—a central element of the context of his social media threats against the Secret Service, per the Affidavit accompanying the Complaint—likewise prevents him from rationally identifying relevant proof and issues in the case, evaluating them in relation to the charges against him, and cooperating with his lawyer in case preparation. *See* DE #29 at 8 (noting Franklin's belief that "the names of people who can allegedly confirm his past relationship with Katy Perry[]" are "pertinent evidence" in the instant case); *id.* (observing that Franklin's failure to cooperate with counsel in his defense stems from counsel's failure to accept Defendant's perceived past relationship). As these delusions are inextricably woven throughout Defendant's overarching approach to and perception of this case—wholly commandeering his decision-making capabilities—they severely impair his ability to proceed rationally and competently in this matter. *See, e.g.*, *Rodman*, 446 F. Supp. 2d at 493–94 ("[Defendant's] fixed delusional beliefs are intimately connected with the substance of the case against him and thus his ability to cooperate with counsel and assist in his own defense is currently undermined."); *United States v. Blohm*, 579 F. Supp. 495, 504–05 (S.D.N.Y. 1983) (concluding that the defendant's beliefs, as they were closely tied to case substance, rendered his "view of the actual nature of the proceedings, their course and their likely outcome [ ] extremely unrealistic"); *Krueger*, 2017 WL 2349600, at *2 (finding significant "the fact that Defendant's delusion relate[d] specifically to the charges themselves"). The Complaint affidavit demonstrates such linkage.

and treatment. And, his beliefs regarding the illegitimacy of the instant charges prevent him from confronting them and considering his case and possible resolution paths. Such an inability to engage in personal and situational critical assessment confirms serious mental health concerns that directly impact Defendant's ability to apply facts and legal concepts to his own case and assist in his defense.

Against this uncontroverted backdrop of consistent medical findings, the Court considers Defendant's in-court demeanor and his attorney's representation that Franklin is able to assist in his defense. Notably, neither the Court, nor defense counsel, has had the concentrated, intensive opportunity to longitudinally observe Franklin the medical evaluators did. Given the length of each evaluation period (over two months for the first, and over four months for the second), the thoroughness of both examiners' clinical observations, findings, and analyses, the evaluators' credentials and experience in evaluating competency, and the clear consistency of the two opinions, the Court accords the medical evidence in the record significantly great weight. *Cf. Dubrule*, 822 F.3d at 877 (characterizing as reasonable the district court's decision to accord greater weight to one expert than another based on that expert's "training and experience in forensic psychology," and the facts that "her opinion was based on a more extensive evaluation of [the defendant] and her conclusions were more thoroughly explained"); *see also United States v. Gray*, 421 F.2d 316, 318–19 (5th Cir. 1970) (concluding that lay testimony concerning personal observations of the defendant were "insufficient to establish [his] competency in the face of unimpeached expert testimony to the contrary"); *Wallace v. Kemp*, 757 F.2d 1102, 1109 (11th Cir. 1985) ("[W]hen the expert testimony clearly and overwhelmingly points to a conclusion of incompetency, the jury cannot arbitrarily ignore the experts in favor of the observations of laymen.") (internal quotation marks and citation omitted); *id.* (citing *Brock v. United States*, 387

F.2d 254, 257 (5th Cir. 1967), and characterizing it as "requiring objective reason to ignore expert testimony which is rebutted only by lay testimony").

When weighed against the medical evidence demonstrating Franklin's persisting incompetency, neither Defendant's isolated and sanitized courtroom demeanor, nor his unverifiable and untestable manifestations to counsel, tip the scale in favor of a contra finding. Indeed, the evaluators found Defendant often duplicitous and able to manipulate his conduct and disposition based on audience. *See, e.g.*, DE #29 at 5 (noting that Defendant does not discuss Katy Perry or the alleged gun conspiracy with other inmates, despite frequent discussion in the evaluation course and discussion with friends outside of the custodial setting); *id.* at 6 (describing Defendant as "deceitful" and noting a past incident where Franklin attempted to use a fake ID to access Katy Perry). Moreover, where the unanimous and unimpeached empirical evidence casts considerable doubt on Defendant's rationality and ability to make reality-based case decisions, Defendant's own protestations of competency are hardly dispositive. *See Tooley v. Rose*, 507 F.2d 413, 414 (6th Cir. 1974) ("It seems odd that the man whose mental capacity was being questioned, would have been the one to make the ultimate decision whether . . . to go ahead with the trial.") (quotation marks and citation omitted). Accordingly, based on the entirety of the record before the Court, a preponderance of the available evidence establishes that Defendant, though able to abstractly understand the factual charges and legal process, cannot rationally or realistically apply that information in his own case and is further unable to meaningfully communicate or cooperate with counsel to assist rationally in his own defense.

The Court concludes with a few remarks about the calculus. Franklin obviously (as the captured calls and emails from the second evaluation show) reveals himself situationally. He is intelligent and understands, to a degree, the importance of audience. Thus, the Court discounts his

courthouse demeanor, both before the undersigned and before Judge Atkins, as a meager and doubtful sample of Franklin's real self. Further, his lawyer tries to liken Franklin's thought and analytical deficits to those of many clients that simply may have poor judgment and questionable priorities. Mr. Lane could do nothing more than generalize in this argument, so the Court is without details. However, a defendant as poor strategist is different altogether from a defendant saddled with the delusions and limitations of a person suffering the impairments of severe mental illness (such as schizoaffective disorder or delusional disorder). The Court refuses the anecdotal equivalency and relies on the uncontradicted expert proof.

For all of these reasons, pursuant to § 4241 and *Dusky*, the Court finds Defendant presently incompetent to face further proceedings in this matter and **ORDERS** as follows:

1. The United States shall file any motion seeking medication based on *Sell v. United States*, 123 S. Ct. 2174 (2003) **no later than February 28, 2020**. The Court will set expedited briefing on any such motion, if filed, and set a subsequent hearing as appropriate;

2. The Government may file appropriate motions. Any BOP consideration and assessment of potential medical regimen options shall proceed concurrently[5] with briefing on any *Sell* motion and, if possible, be completed by the date of any subsequent hearing. If additional time for such BOP consideration becomes necessary, the United States shall promptly file a proper motion and inform the Court of and identify the basis for same;

3. The Court intends that BOP consideration and evaluation of the § 4246 topics shall likewise proceed concurrently with any *Sell* motion briefing and, if additional time is required in

---

[5] The Court and parties discussed concern over the sentence potentiality and Franklin's time already in custody. That is partly why the Court endeavors to ensure that the prospective steps move in parallel, to the full extent possible. Obviously, the parties can raise concerns or objections about this, but the Court surely wants to guard against any unwarranted period of custody owing to the pending charge.

this regard, the United States shall likewise promptly advise the Court and explain such need, by motion;

4. Both counsel shall, at any *Sell*-based hearing, be prepared to discuss all potential case progression paths (to include reflection of relevant information from the BOP, as noted above); and

5. The Court will, upon filing of any *Sell* motion or passage of the deadline for same, reassess the case posture and schedule as needed.

This the 14th day of February, 2020.

Signed By:
*Robert E. Wier* REW
United States District Judge